# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

LANCE S.,[1]

    Plaintiff,

v.                                                                                 Case No. 21-cv-00168-WJ-SCY

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,[2]

    Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

    Plaintiff argues that the Commissioner committed error when she denied Plaintiff's claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401-434. On June 2, 2022, the Honorable William P. Johnson referred this matter to me for proposed findings and a recommended disposition under 28 U.S.C. § 636(b). Doc. 34. Plaintiff argues that the ALJ failed to consider the combined effect of his non-severe mental impairments. Plaintiff also argues that the ALJ improperly rejected the medical opinion of consultative examiner Dr. Michael Gzaskow. Finally, Plaintiff argues that the ALJ failed to assess the vocational effect of Plaintiff's dizziness and need for frequent absences from work due to his regimen of medical appointments. Because

---

[1] In the interest of privacy, this document uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this document uses the same designation for a non-governmental party's immediate family member.

[2] Kilolo Kijakazi was appointed the acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).

none of these arguments justify remand, I recommend that the Court affirm the decision below and DENY Plaintiff's motion to remand (Doc. 20).[3]

## APPLICABLE LAW

A.   Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

---

[3] I reserve discussion of the background, procedural history, and medical records relevant to this appeal for my analysis.

[4] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [he] do[es] less, get[s] paid less, or ha[s] less responsibility than when [he] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

 (4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [the claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

 (5) If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

 B. <u>Standard of Review</u>

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the

proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court

4

"should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## ANALYSIS

Plaintiff makes three arguments on appeal: that the ALJ improperly failed to consider the combined effect of Plaintiff's non-severe mental impairments, that she improperly rejected Dr. Gzaskow's medical opinion, and that she failed to properly assess the vocational effect of Plaintiff's need for frequent absences from work due to medical visits.

### I. Failure to consider combined effect of non-severe impairments

Plaintiff first argues that the ALJ failed to account for Plaintiff's non-severe impairments, even when the ALJ gave persuasive weight to Dr. Kampschaefer's and Dr. McGaughey's opinions which included reference to those impairments. Doc. 21 at 8. Plaintiff argued that the ALJ "did not list any non severe impairment in her decision" and that the ALJ must consider even non-severe impairments in her RFC analysis. *Id.* at 8-9. Defendant responds that the ALJ did find non-severe mental impairments and that she considered all of Plaintiff's mental impairments in her RFC analysis, but she did so at Step Four rather than Step Two. Doc. 25 at 1, 7-10.

First, I observe that the ALJ does discuss non-severe impairments during Step Two. She states that "[t]he claimant's medically determinable mental impairments of generalized anxiety disorder and panic attacks, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." AR 18. Therefore, Plaintiff's statement that the ALJ did not list *any* non-severe impairment is incorrect.

To the extent Plaintiff argues the ALJ should have discussed other non-severe impairments, or have found his mental impairments to be severe, the error—if any—is harmless. The ALJ did not list at step two Plaintiff's diagnoses of somatic symptom disorder and dysthymia—a fact Defendant admits. *See* Doc. 25 at 7. But the purpose of Step Two is simply to identify whether a claimant has an impairment or combination of impairments that constitutes severe disability. "As long as the ALJ finds one severe impairment, the ALJ may not deny benefits at step two but must proceed to the next step." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2006). Only one severe impairment is necessary to move forward: "the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe." *Id.* Here, the ALJ found that Plaintiff had a severe impairment: Persistent Postural Perceptual Dizziness. AR 17. As a result, I recommend that the Court find that the ALJ did not commit reversible error at Step Two.

Moving on to Step Four, Plaintiff argues that the ALJ is required to consider the combined effects of his severe *and* non-severe impairments when determining his RFC. Doc. 21 at 8-10 (citing 20 C.F.R. § 404.1545(a)(2)). Defendant responds that the ALJ *did* consider all of Plaintiff's impairments, including non-severe impairments, in her RFC analysis. Doc. 25 at 1, 8-9. I agree. The ALJ considered Plaintiff's mental health issues at length:

- Plaintiff testified that "[h]is anxiety started in 2013", that "medication helps his anxiety", that "[h]e has panic attacks", and that "[h]e is not receiving mental health treatment" (AR 20)
- Plaintiff "testified that he was not receiving mental health treatment and his doctor had suggested it may be an option in the future" and that he received a referral for counseling from Dr. John Becker and his physical therapist (AR 21)
- Plaintiff received a referral for face-to-face counseling and a clonazepam prescription in December 2019 (AR 22)
- Plaintiff went to physical therapy in January 2019 "reporting he had stopped his SSRI medication, but was unsure if he was improving" (AR 22)
- In February 2019, Dr. Gzaskow performed a consultative examination for Plaintiff and diagnosed him with "somatic symptom disorder with undefined etiology that

6

- results in chests [sic] pain, dizziness, vertigo and anxiety; general anxiety disorder with panic attacks; and dysthymia" (AR 22)
- Plaintiff went to physical therapy on multiple occasions in March 2019 and reported that he was "anxious something was wrong with him" and that he had a "fear that his symptoms would never change" (AR 22)
- One of Plaintiff's doctors indicated "the claimant had been obtaining clonazepam from two separate sources concurrently" on March 6, 2019 (AR 22)
- During physical therapy in April 2019, Plaintiff "was advised he may benefit for [sic] psychiatric care" (AR 22-23)
- In June 2019, Plaintiff "requested a refill of clonazepam, and reported that he attempted citalopram, but it caused headaches and made him unable to function" (AR 23). Plaintiff "was refilled for [his] clonazepam with two refills." *Id.*
- During an annual examination in September 2019, Plaintiff reported "never feeling sad" and "no anxiety" (AR 23). "Upon review, the claimant had filled prescriptions for clonazepam on July 30, 2019 (0.5 mg tablets) and on September 24, 2019 (1 mg tablet)." *Id.*
- In December 2019, Plaintiff received another referral for mental health counseling and filled a prescription for clonazepam (AR 23)

The ALJ repeatedly discussed Plaintiff's anxiety, panic attacks, mental health medication, and referrals to mental health counseling. She also explicitly noted Dr. Gzaskow's diagnostic impressions of somatic symptom disorder and dysthymia, the diagnoses left out of the Step Two analysis. AR 22. She determined that Plaintiff's testimony about the limiting effects of his symptoms was "not entirely consistent with the medical evidence," which included Plaintiff's decision not to follow up on his repeated referrals to counseling and Plaintiff's activities of daily living such as living by himself, driving, handling his personal needs and medical treatment, and performing household chores. AR 20-21. She also rejected Dr. Gzaskow's opinion—a matter discussed more fully below—thereby addressing the weight she gave to its contents. AR 24. Additionally, she addressed anxiety, somatic symptom disorder, and dysthymia when she found Dr. Kampschauer and Dr. McGaughey's reports classifying such diagnoses as non-severe to be persuasive. AR 24. In short, she analyzed Plaintiff's mental health symptoms and the medical evidence surrounding them in coming to her decision about the RFC, even though those symptoms were not severe impairments.

Plaintiff also argues that the ALJ failed to properly analyze the actual symptoms in Dr. McGaughey's report.[5] Doc. 21 at 10; *see* AR 24. Dr. McGaughey discussed medical records and recorded Plaintiff's diagnoses of "anxiety and obsessive-compulsive disorders," "depressive, bipolar and related disorders," and "somatic symptom and related disorders" as non-severe. AR 75. (Dr. Kampschaefer made similar findings on reconsideration. AR 91.) Dr. McGaughey concluded Plaintiff's mental impairments were non-severe. AR 77. The ALJ found this opinion "persuasive and consistent with the findings in the consultant examination." AR 24. Plaintiff does not clarify which symptoms the ALJ could have or should have discussed in her analysis of Dr. McGaughey's report other than dizziness—which the ALJ discussed at length in AR 20-23. Therefore, Plaintiff has not identified an error in the ALJ's reasoning.

As such, I recommend that the Court affirm the ALJ's analysis of Plaintiff's non-severe symptoms.

## II.    Rejection of Dr. Gzaskow's opinion

Plaintiff next argues that the ALJ improperly rejected Dr. Gzaskow's opinion for several reasons: 1) the ALJ incorrectly substituted her lay opinion with a medical opinion regarding Plaintiff's appearance and need for a payee, 2) Dr. Gzaskow's consultative results are necessarily somewhat subjective due to their psychological nature, 3) any vagueness is minor and does not justify total rejection of the opinion, 4) Plaintiff's ability to perform minimal daily activities does not mean that he can engage in substantial gainful activity, and 5) Dr. Gzaskow's single visit with Plaintiff was more than the state agency consultants who never saw Plaintiff. Doc. 21 at 5-

---

[5] On this page, Plaintiff mistakenly refers to Dr. McGaughey as Dr. McGrath. He also erroneously refers to Dr. Kampschaefer, the state agency psychological consultant, as Dr. Leong, who is a state agency *medical* consultant and did not opine about Plaintiff's psychological conditions. *See* Doc. 21 at 8.

8. Defendant responds that the ALJ's analysis was well-reasoned and supported by substantial evidence. Doc. 25 at 14.

    A.  <u>Legal Standard</u>

Plaintiff filed his disability application after March 27, 2017, and thus the significantly revised rules for medical opinions apply to this case. AR 15. For claims filed on or after March 27, 2017, all medical sources can provide evidence that is categorized and considered as medical opinion evidence and subject to the same standard of review. 20 C.F.R. § 404.1520c(b). The factors of supportability and consistency are the most important factors in determining the persuasiveness of a medical opinion. *Id.* § 404.1520c(b)(2). "Supportability" examines how closely connected an opinion is to the evidence and explanations presented in that opinion. *Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *6 (10th Cir. July 6, 2021).[6] "Consistency" compares a medical opinion to the evidence in the rest of the record. *Id.* An ALJ may, but is not required to, consider other factors such as relationship with the claimant and specialization. *Id.* (citing 20 C.F.R. §§ 404.1520c(c), 416.920c(c)).

Thus, to the extent Plaintiff relies on or invokes the old standard of reviewing medical opinion evidence, *e.g.*, Doc. 21 at 5, I recommend the Court reject Plaintiff's arguments.

    B.  <u>Background</u>

Dr. Gzaskow performed a consultative examination and reviewed medical records. AR 396. He diagnosed Plaintiff with somatic symptom disorder, general anxiety with panic attacks, and dysthymia. AR 399. He assessed limitations in Plaintiff's abilities to "understand, remember and carry out instructions" as "severe"; to "interact appropriately with supervisor, co-workers

---

[6] I cite unpublished Tenth Circuit cases for their persuasive value. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

and public" as "moderate"; and "to concentrate, persist, maintain pace and adapt or manage oneself" as "severe." *Id.* He opined that Plaintiff would not need a payee. *Id.* In terms of symptoms, Dr. Gzaskow identified that Plaintiff experiences dizziness, passing out, a family history of hypertension and heart problems, a seizure disorder, mildly depressed mood, sad and flattened affect, a history of episodic anxiety, and panic attacks. AR 397-98. Dr. Gzaskow performed a mental status examination and recorded a depressed mood and flattened affect, but no other abnormal results. AR 398-99. Dr. Gzaskow opined that Plaintiff's intellectual functioning is "above average" with "no deficits in immediate recall, recent or remote memory" with "intact" calculations and abstractions and "average" general fund of knowledge. AR 399. But Dr. Gzaskow's opinion does not indicate that he performed any cognitive or other psychological tests beyond a basic mental status examination on Plaintiff or what those tests might have consisted of, and the symptoms he identified do not clearly correlate to the limitations he listed.

> The ALJ evaluated this opinion as follows:
>
> Consultative examiner Dr. Michael Gzaskow opined the claimant was severely limited in understanding, remembering and carrying out instructions; moderately limited in interacting appropriately with supervisors, coworkers and public; and severely limited in the ability to concentrate, persist, maintain pace and adapt to manage oneself. The undersigned finds this opinion unpersuasive as it appears based upon the claimant's subjective complaints rather than the consultative results. The claimant was found to be was [sic] alert and cooperative throughout; neatly dressed with good grooming; excellent eye contact; posture was relaxed with an appropriately changing facial expression; regular psychomotor activity; was cooperative with logical speech; above average intelligence; oriented in all spheres; no deficits in immediate recall, recent or remote memory; good insight/judgment; and calculations/abstractions were found to be intact. This is not consistent with the severity of limitations opined by Dr. Gzaskow. Further, Dr. Gzaskow opined the claimant would not need a payee, which is also inconsistent with a severe limitations [sic] in adapting and managing oneself (as well as understanding, remembering, carrying out instructions, concentrating and persisting). Additionally, the terms "severe" and "moderate" do not appear to be defined making it extremely difficult to rely on such statements in establishing

>vocational limitations. Also, Dr. Gzaskow only had the opportunity to examine the claimant once and was not able to review the all [sic] of the longitudinal medical evidence supported after the examination. (Exhibits 5F-12F). Finally, the state agency consultants found the limitations to be excessive after reviewing the claimant's longitudinal medical evidence. The state agency consultants are educated in the rules and regulations of the Social Security Administration.

AR 24 (some citations omitted).

### C. Supportability and subjectivity

The ALJ found Dr. Gzaskow's opinion about Plaintiff's limitations unpersuasive in part because it was not based on the "consultative results," in that the results and findings that *are* in the report do not support the limitations. AR 24. Plaintiff argues that in doing so, the ALJ incorrectly substituted her opinion for Dr. Gzaskow's. Doc. 21 at 5-6. Similarly, Dr. Gzaskow opined that Plaintiff would not need a payee, and the ALJ found this inconsistent with the rest of Dr. Gzaskow's findings; Plaintiff argues that here again, the ALJ "intrude[d] in the realm of the consulting psychiatrist." *Id.* at 6.

As Defendant points out, an ALJ may consider whether an opinion has internal support. Doc. 25 at 11 (citing 20 C.F.R. § 404.1520c(b)(2), (c)(1)). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

Plaintiff argues that the ALJ's assessment was improper because psychological examinations necessarily require listening to the patient's subjective complaints. AR 24; Doc. 21 at 6. Plaintiff relies on *Thomas v. Barnhart*, which held: "The ALJ cannot reject Dr. Mynatt's opinion solely for the reason that it was based on [the claimant]'s responses because such rejection impermissibly substitutes her judgment for that of Dr. Mynatt." 147 F. App'x 755, 759

11

(10th Cir. 2005). In *Thomas*, the psychologist's findings were based on the claimant's "observed signs and symptoms" and the claimant's responses to "psychological tests." *Id.* (citing 147 F. App'x at 759).

That is not true here. As the ALJ stated, Dr. Gzaskow based his opinion on the Plaintiff's complaints *rather than* the consultative results, signs, symptoms, or tests. The ALJ explained that the consultative results—i.e., Plaintiff's observed signs and symptoms and the responses to psychological tests—were clearly inconsistent with the limitations in the doctor's opinion. AR 24. Here, as the ALJ observes, Dr. Gzaskow did not describe any tests that he performed or set forth any signs or symptoms that might logically support his conclusions about Plaintiff's limitations—other than relaying Plaintiff's own opinions as to his ability to do work. AR 397-99. As I have observed in a prior case, "*Thomas* does not stand for the proposition that an ALJ cannot, in determining what weight to assign an opinion, consider that the opinion is based on subjective information provided by the claimant." *Houston v. Colvin*, 180 F. Supp. 3d 877, 888 (D.N.M. 2016). And the Tenth Circuit has, in other cases, affirmed the rejection of an opinion for similar reasons. *Rivera v. Colvin*, 629 F. App'x 842, 845 (10th Cir. 2015) (affirming where "the ALJ explained that he gave less weight to Dr. Kutz's opinion because Dr. Kutz examined Rivera only once and relied on her subjective complaints, which the ALJ found were incredible, rather than the more objective information contained in Rivera's medical records" (footnote omitted)).

The ALJ's observation that the limitations Dr. Gzaskow described are inconsistent with his decision that Plaintiff would not need a payee is also supported by substantial evidence. Although another factfinder could come to a different conclusion, given the vagueness of Dr. Gzaskow's assigned limitations it is not reversible error for the ALJ to consider this factor. It is reasonable to ask how a person with severe limitations in adapting and managing oneself as well

12

as understanding, remembering, and carrying out instructions could safely manage money, and Dr. Gzaskow does not provide the specifics that might explain away the apparent contradiction.

For the above reasons, I recommend that the Court reject Plaintiff's argument and affirm the ALJ's decision to find Dr. Gzaskow's opinion unpersuasive.

D.  Vagueness

Plaintiff argues that it was inappropriate for the ALJ to find the terms "severe" and "moderate," as used in Dr. Gzaskow's opinion, too vague. He points out that "moderate" and "severe" correlate well to "moderate" and "marked" in 20 C.F.R. Subpart P, App. 1, 12.00F2, and that in any event, it is the ALJ's job to translate Dr. Gzaskow's opinion about medical limitations into the appropriate category of vocational limitations. Doc. 21 at 7.

The terms "moderate" and "severe" are not themselves so vague as to cause confusion. Rather, the problem with Dr. Gzaskow's use of those terms is that the moderate and severe limitations he describes have no context because, as outlined above, they lack support from within his opinion. Therefore, to the extent the ALJ argues that the terms "moderate" and "severe" are vague enough to reject the opinion outright, I do not necessarily agree; while the terms could be clearer, they are not so confusing that the opinion's validity is in question. But the ALJ did not reject the opinion outright on this basis; as the ALJ observed elsewhere, the opinion itself *is* confusing due to its lack of internal support and context for the statements regarding Plaintiff's limitations.

E.  Plaintiff's ability to perform minimal daily activities

Plaintiff argues that the "ALJ finding of ability to engage in some daily activities does not justify total rejection of the consultative report." Doc. 21 at 7. The ALJ makes no reference

to Plaintiff's ability to engage in daily activities throughout her analysis of Dr. Gzaskow's opinion. AR 24. Therefore, I recommend the Court disregard this argument.

F.  Dr. Gzaskow's single visit with Plaintiff

Plaintiff's final argument against the ALJ's decision to find Dr. Gzaskow's opinion unpersuasive is that the ALJ states that Dr. Gzaskow only examined Plaintiff once and could not review all the longitudinal medical evidence from after the examination. AR 24; Doc. 21 at 8. Plaintiff's implication is that it is inconsistent to reject Dr. Gzaskow's opinion because of the single visit when the ALJ found the state agency psychological consultants' opinions persuasive and those doctors never even saw Plaintiff. While a doctor's opinion will be more persuasive if the doctor actually examined the claimant, this does not mandate acceptance of an examining consultant over a non-examining consultant regardless of the other factors that go into evaluating the opinion's persuasiveness. Here, the ALJ found Dr. Gzaskow's opinion unpersuasive for many other reasons. And as Defendant points out, the ALJ emphasized that Dr. Gzaskow did not indicate that he reviewed the longitudinal medical evidence, while the state agency psychological consultants did examine this full record, which included Dr. Gzaskow's own opinion. Therefore, the ALJ's treatment of the different doctors was not inconsistent.

III.   **Vocational effects of dizziness and frequent absences from work**

Plaintiff's last argument is somewhat meandering and, as a result, confusing. He appears to argue that the ALJ failed to consider the fact that he would need to attend frequent medical appointments, which would limit his ability to attend work regularly. Doc. 21 at 11-12. He also seems to argue that the RFC does not adequately account for his dizziness. *Id.* at 12.

Regarding his argument about dizziness, Plaintiff appears to believe that the ALJ should have added more limitations beyond those she stated in the RFC. But Plaintiff does not identify

what other limitations would be necessary—the ALJ already limited him to work that does not involve "any exposure to unprotected heights; open flames; open bodies of water; or sharp objects such as knives or blades" and stated that he could not "climb ropes, ladders, or scaffolds" or work in "extreme hot temperatures (over 90 degrees)." AR 19. Plaintiff insists that "he experiences these symptoms [dizziness] in everyday activities" but does not explain what accommodations he might require, if any. Plaintiff does not argue there was no substantial evidence for the limitations the ALJ did assign. Because the Court does not make arguments on Plaintiff's behalf, I recommend disregarding this line of inquiry.

Regarding his argument about frequent absences from work, Plaintiff claims that his demanding medical and physical therapy schedule would require him to be absent from work more than the VE's stated permissible average of "about one day per month over time." Doc. 21 at 11. Although it is true that Plaintiff has many medical and physical therapy appointments, he does not point to evidence in the record that these appointments will require him to miss work. For example, he identifies weekly physical therapy appointments from late July to early September 2020, but all these appointments took place after 5:00 p.m. AR 475. Because Plaintiff does not point to adequate evidence in the record to indicate that he would miss so much work that he would need a special accommodation, the ALJ did not err by failing to consider this.

To the extent Plaintiff argues that the record is incomplete on this matter, his argument is underdeveloped. Plaintiff's counsel did not ask the VE anything about this topic during the hearing. While it is the ALJ's duty to develop a record and Social Security application proceedings are not adversarial, the burden of proving disability is on Plaintiff, and the ALJ may ordinarily expect counsel for the claimant to identify the issues and structure the case so those issues are adequately explored. *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004). And

the duty to develop the record exists only where the record is insufficient to make a finding of disability. *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) ("Here, there was no need to further develop the record because sufficient information existed for the ALJ to make her disability determination."). Plaintiff does not demonstrate how the record in this case was insufficient to determine disability. I recommend that the Court find that Plaintiff's argument on this point fails.

## CONCLUSION

In conclusion, I recommend that the Court affirm the ALJ's decision and DENY Plaintiff's motion to remand.

_____
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**